UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

IV'LEANIA PARKER,                           )
                                            )
                        Plaintiff           )
                                            )
            vs.                             )       CAUSE NO. 2:14-CV-10 RLM
                                            )
CAROLYN W. COLVIN, Acting                   )
Commissioner of Social Security,            )
                                            )
                        Defendant           )


<u>OPINION AND ORDER</u>

Iv'leania Parker seeks judicial review of the final decision of the
Commissioner of Social Security denying her applications for disability insurance
benefits and Supplemental Security Income under the Social Security Act, 42
U.S.C. §§ 423 and 1381. The court has jurisdiction over this action pursuant to
42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court affirms
the Commissioner's decision.

Ms. Parker previously applied for disability benefits in July 2008. After a
hearing and a supplemental hearing in 2010, an ALJ determined that while Ms.
Parker was disabled during the period March 2007 through February 2009,
medical improvement occurred, and her disability ended, as of March 1, 2009. In
her current petition, Ms. Parker asserts disability as of May 5, 2011, due to
several physical impairments. Her application for benefits was denied initially, on

reconsideration, and after an administrative hearing on June 11, 2013, where she was represented by counsel.

In evaluating Ms. Parker's new disability claim, the ALJ considered the documentary evidence presented at the hearing and testimony from Ms. Parker and vocational expert Clifford M. Brady. Applying the agency's standard five-step analysis (20 C.F.R. § 404.1520), the ALJ found that Ms. Parker

(1)     had not engaged in substantial gainful activity since May 5, 2011;

(2)     had severe physical impairments, including status-post bilateral mastectomy and reconstruction, degenerative disc disease of the cervical spine, and fibromyalgia;

(3)     didn't have an impairment or combination of impairments that met or equaled the severity of any impairment in 20 C.F.R. Part 404, Subpt. P, App'x 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926); and

(4)     had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with some physical limitations,[1] and could perform her past relevant work as a

_____

[1] The ALJ concluded that Ms. Parker "has the residual functional capacity to perform sedentary work . . . as [she] can lift and/or carry 10 pounds occasionally and lesser weights frequently; stand and/or walk for up to 2 hours in an 8-hour workday; and sit for up to 6 hours in an 8-hour workday. [She] can never climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs; and occasionally balance, stoop, and crouch but never kneel or crawl. [Ms. Parker] must avoid concentrated exposure to wetness, including slippery, uneven surfaces, and concentrated exposure to hazards, including unprotected heights and dangerous machinery." Rec., at 25 [ALJ Decision (Aug. 15, 2013), at 5].

2

loan interviewer and a correspondence review clerk (20 C.F.R. §§ 404.1565 and 416.965), as well as other occupations, including, but not limited to, a telephone solicitor (7,500 jobs regionally and 650,000 nationally) and a receptionist (8,500 jobs regionally and 750,000 nationally).

The ALJ concluded that Ms. Parker wasn't disabled within the meaning of the Act and wasn't entitled to benefits. When the Appeals Council denied her request for review in December 2013, the ALJ's decision became the final decision of the Commissioner of Social Security. Sims v. Apfel, 530 U.S. 103, 107 (2000); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

Ms. Parker contends that the ALJ ignored important evidence in the record, that his findings aren't supported by substantial evidence, and that he improperly minimized the effects of her fibromyalgia. She asks the court to either reverse the Commissioner's decision and award benefits or remand the case for further proceedings.

## I. STANDARD OF REVIEW

The issue before the court isn't whether Ms. Parker is disabled, but whether substantial evidence supports the ALJ's decision that she is not. Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence means "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Jones v. Astrue</u>, 623 F.3d 1155, 1160 (7th Cir. 2010). In reviewing the ALJ's decision, the court can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, <u>Simila v. Astrue</u>, 573 F.3d 503, 513 (7th Cir. 2009); <u>Powers v. Apfel</u>, 207 F.3d 431, 434-435 (7th Cir. 2000), but, instead, "will conduct a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." <u>Briscoe v. Barnhart</u>, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." <u>Jones v. Astrue</u>, 623 F.3d 1155, 1160 (7th Cir. 2010).

## II. Discussion

### A.

Ms. Parker first claims the ALJ "completely ignored important evidence in the record for no apparent reason," specifically complaining that the ALJ's decision didn't mention the results of the MRI of her brain (dated April 4, 2013) or her CT scan (dated April 16, 2013). Ms. Parker says "[t]he conclusion of both tests was demyelination, a degenerative process that causes problems with nerve

impulse conduction, and more particularly multiple sclerosis," Pltf. Memo., at 9-10, and the ALJ's failure to mention the MRI and CT scan "is a failure to consider all relevant evidence and should result in a remand." The court can't agree.

The written reports don't support Ms. Parker's claim that each test resulted in a diagnosis of demyelination:[2] the MRI report[3] notes a possibility of "demyelinating plaques," the report of the later CT scan[4] doesn't mention "demyelinating plaques" or "demyelination," and neither report concludes that Ms. Parker has carpal tunnel syndrome or multiple sclerosis. But, Ms. Parker says, even if the objective tests didn't identify her condition as carpal tunnel syndrome, her examining physicians believed she had that condition, so the ALJ shouldn't have concluded that the problems she had with her hands wasn't a disabling condition.

Ms. Parker complains that the ALJ didn't mention the MRI or CT scan in his decision, but she hasn't explained how those reports qualify as relevant evidence. Ms. Parker hasn't stated that the tests resulted in any follow-up treatment by Dr. Abu-Aita (who ordered the tests), she doesn't claim the tests changed her course

---

[2] Demyelination is defined as the "breakdown of the fatty sheaths that surround and insulate nerve cells," AMA COMPLETE MEDICAL ENCYCLOPEDIA 443 (2003).

[3] Brain MRI Radiology Report, Impression: "Very few periventricular and subcortical white matter hyperintensity foci bilaterally. This is a nonspecific finding and could represent demyelinating plaques but could also be sequela of chronic small vessel ischemic disease." Rec., at 655.

[4] CT Head Scan Radiology Report, Impression: "No evidence of acute intracranial disease. A collection of a few cortical veins in the right parasagittal convexity corresponds to possible abnormality seen in the brain MRI. No mass or abnormal enhancement." Rec., at 654.

of treatment or medications, and she hasn't argued that the tests confirmed a disabling condition. An ALJ isn't required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits." Simms v. Astrue, 599 F. Supp. 2d 988, 997 (N.D. Ind. 2009); *see also* Murphy v. Colvin, 759 F.3d 811, 815 (7th Cir. 2014) ("In reaching its decision, the ALJ must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence."). The ALJ discussed Ms. Parker's testimony and reviewed the medical evidence in his report and based on those considerations concluded that Ms. Parker's hand pain wasn't so disabling to preclude her from performing her past relevant work. While Ms. Parker complains that the ALJ had "tunnel vision regarding the EMG," she hasn't offered any explanation about her conclusion in that regard nor has she explained how the non-specific results of the MRI and CT scan could have affected the ALJ's decision. Ms. Parker hasn't shown that the ALJ "ignored important evidence for no apparent reason."

### B.

Ms. Parker next claims the ALJ's findings with respect to the following issues aren't supported by substantial evidence.

*Glaucoma*

Ms. Parker contends the ALJ's conclusion that her glaucoma isn't a severe impairment is inconsistent with the treatment records for her condition. She had laser surgery on both eyes in 2013 and was prescribed medicated eye drops, but even with the use of those drops, she continued to have headaches and problems with the pressure in her eyes. Ms. Parker claims the ALJ's statement that her doctor "just recommended drops' reflects a complete misunderstanding of glaucoma and its treatment and is not consistent with the treatment records. . . . The treatment options at the Deen Gross Eye Center include the use of medicated eye drops, laser treatments and surgery. The very purpose of the various treatments is to prevent further damage to the optic nerve." Pltf. Memo., at 11.

In reviewing the medical records relating to Ms. Parker's glaucoma, the ALJ found that Ms. Parker:

> initially went to the Deen Gross Eye Center in December 2011 complaining of blurry vision since her glaucoma surgery 10-12 years ago. The doctor opined that [she] had POAG in her left eye and just recommended drops. The doctor noted in March 2012 that [she] responded well to the treatment, and he found in May 2012 that her condition was stable. [Ms. Parker] did not return to the doctor until March 2013 when she complained of irritation in her eye when she rubbed it. The doctor noted that [her] vision was 20/40, and he again prescribed drops. In May 2013, the doctor indicated that [she] had no visual complaints and that her eyes felt okay. [She] recently underwent two laser treatments in May and June 2013 on her left eye, and she has just complained of a little irritation.

Rec., at 24. The ALJ noted, as well, that the records from the Deen Gross Eye Center contain "no evidence of any decreased vision" and report that Ms. Parker "has responded well to treatment." Rec., at 24.

Contrary to Ms. Parker's claim, the ALJ didn't merely state that her physicians had "just recommended drops" for her glaucoma; he considered her past glaucoma surgery, her laser treatments, and her care at the Deen Gross Eye Clinic. Ms. Parker says she has pain, blurry vision, and headaches that last all day, but none of the treatment records from the Deen Gross Eye Clinic contain any restrictions on, or recommendations of limitations to, her activities. She testified at the hearing that she is able to read, watch television, and drive. Rec., at 55, 58. Substantial evidence in the record supports the ALJ's conclusion that Ms. Parker's glaucoma is "non-severe." *See* Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Substantial evidence . . . [is] more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.").

*Carpal Tunnel Syndrome*

Ms. Parker contends the ALJ's conclusion that her wrist and hand pain isn't a severe impairment isn't supported by substantial evidence in the record.

As already discussed, the ALJ examined the record of Ms. Parker's complaints of hand pain and the treatment she received for that condition. He

noted that an EMG of her upper extremities showed no evidence of radiculopathy or carpal tunnel syndrome, but that the MRI of her spine showed evidence of cervical spondylosis; reports from the consultative examination were that she had normal grip strength and fine finger manipulation; none of the records from her treating physicians included any limitations on her activities; and no "medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, either individually or in combination." Rec., at 24.

The ALJ noted in his report that even though Ms. Parker had undergone surgery for carpal tunnel syndrome, she reported to her doctors and testified at the hearing that she continued to experience pain in her hands. The ALJ also cited the following evidence in the record, which shows that

– Robert Stannard, M.D., treated Ms. Parker in March 2012 for neck pain;

– Dr. Stannard referred her to Dr. George Abu-Aita, a neurologist, the following month with complains of neck pain and numbness of her hands;

– an April 2012 MRI of her spine showed cervical spondylosis and possible neck spasms;

– an EMG of her upper extremities in April 2012 showed no evidence of carpal tunnel syndrome;[5]

– in July 2012, Ms. Parker underwent a consultative examination by Dr. M. Siddiqui, whose report shows that Ms. Parker told him that she has burning pain in her hands that sometimes radiates up to her shoulders and that she has trouble lifting and gripping well with her hands; based on his examination, Dr. Siddiqui found that Ms. Parker didn't appear to be in any acute distress, ambulated with a normal gait, had diminished range of motion in her lumbar spine but otherwise had a full range of motion, had trouble squatting but had no issues performing heel-to-toe walking, had generalized muscle tenderness with normal muscle and grip strength, and could pick up and grip coins with both hands;[6]

– Ms. Parker began physical therapy in August 2012 for neck and shoulder pain, which resulted in a recommendation of continued therapy to improve her muscle strength and mobility in her neck and

---

[5] The following results were reported from Ms. Parker's EMG: "[n]erve conduction studies of both upper extremities were normal," "[n]eedle electromyography of both upper extremities and the lower cervical paraspinal muscles was normal," and "[t]here is no electrodiagnostic evidence of polyneuropathy, carpal tunnel syndrome, ulnar neuropathy, myopathy, brachial plexopathy, or active cervical motor radiculopathy." Rec., at 601.

[6] Dr. M. Siddiqui stated in his examination report that Ms. Parker's muscle strength was "5/5 bilaterally," her grip strength was "-5/+5 bilaterally," she had positive Tinel and Phalen tests bilaterally, and she "is able to pick [up] and grip coin well with both hands separately." Dr. Siddiqui found that Ms. Parker had a "possible recurrence of carpal tunnel syndrome." Rec., at 595.

shoulders based on an assessment that Ms. Parker had a decreased range of motion in her neck, diminished strength in her upper extremities, and mild to moderate tightness in her neck;

– she was examined by Dr. Abu-Aita again in February 2013 for neck pain and he opined that she might have fibromyalgia; and

– she went to Mark Carter, M.D. in April 2013 to establish care; Dr. Carter noted that Ms. Parker had diffuse myalgias and greater than 10 tender points and prescribed Cymbalta for her fibromyalgia.

Rec., at 24, 26-28. The ALJ noted, too, that Ms. Parker had no "persistent inflammation, deformity of one major peripheral joint, ankylosing spondylitis[,] or repeated manifestations of inflammatory arthritis." Rec., at 25.

In support of her claim that the ALJ's opinion isn't supported by substantial evidence, Ms. Parker cites to medical records that she says evidences her hand pain; the ALJ reviewed that same medical evidence in his decision. Ms. Parker claims her wrists and hands constitute a severe problem that "is completely documented by the treating physicians, the consultative physician, and physical therapist," Pltf. Memo., at 12; the ALJ recognized that she complained about hand pain to her physicians and those physicians noted her complaints and recommended treatment for her condition. And while Ms. Parker disagrees with the ALJ's conclusion that the medical evidence didn't support her claim of disabling pain or a requirement of limitations beyond those set forth in his

decision, the court can't "reweigh the evidence or substitute [its] own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, [the court] must uphold the decision under review." <u>Shideler v. Astrue</u>, 688 F.3d 306, 310 (7th Cir. 2012). The ALJ's review of the medical evidence and Ms. Parker's complaints of continued hand pain supports a finding that his determination in this regard is grounded in substantial evidence in the record.

*Medical Evidence Listing*

Ms. Parker next claims that although the ALJ considered listing 13.10 for her breast cancer, he failed to apply listing 1.08 in 20 C.F.R. § 404, subpt. P, app. 1. Ms. Parker reports that between October 2011 and December 2012 she had eight breast reconstruction surgeries. She maintains she equaled listing 1.08, and "[b]ased on this consideration alone the case should be remanded with instructions to pay [her] for at least a closed period of disability due to breast cancer and its related treatment." Pltf. Memo., at 14.

To meet listing 1.08, Ms. Parker must demonstrate "[s]oft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management . . . directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." 20 C.F.R. § 404, subpt. P, app. 1 § 1.08. Ms. Parker claimed an upper body injury met the listing, so she was required to prove "an

extreme loss of function of both upper extremities . . . that interferes very seriously with [her] ability to independently initiate, sustain, or complete activities" such as "prepar[ing] a simple meal and feed[ing herself] . . . tak[ing] care of personal" 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(c).

The ALJ cited evidence in the record demonstrating that Ms. Parker had no such extreme loss of function. The ALJ noted that Dr. Siddiqui found that Ms. Parker had "full strength in her extremities." Rec., at 25. Dr. Siddiqui opined that Ms. Parker had normal muscle strength and intact grip strength and she was able to pick up and grip a coin with both hands. Rec., at 595. Furthermore, as the ALJ noted, Ms. Parker testified at the hearing that she cooked simple meals, straightened up the house, and did the laundry. Rec., at 54. Finally, the ALJ noted that no medical source found that Ms. Parker met any listing. Rec., at 24.

Ms. Parker bears the burden of demonstrating that she meets the criteria specified in the listing. *See* Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir.2006). In deciding whether Ms. Parker meets a listing, the ALJ must adequately articulate the foundation for his conclusions. *See* Scott v. Barnhart, 297 F.3d 589, 595 (7th Cir.2002).

The ALJ adequately articulated a basis for concluding that Ms. Parker did not meet listing 1.08. The ALJ analyzed medical evidence and testimony relevant to listing 1.08 and noted that no medical source found that Ms. Parker met any listing. The ALJ discussed relevant medical evidence about muscle and grip

strength and considered Ms. Parker's activities of daily living. While the ALJ didn't specifically discuss listing 1.08 in his opinion, such a failure alone doesn't necessitate remand unless the ALJ's analysis was perfunctory. *See* Ribaudo v. Barnhart, 458 F.3d 580, 583 (7th Cir.2006). The ALJ's analysis in this case was not perfunctory. Rather, the ALJ adequately articulated a basis for concluding that Ms. Parker didn't meet listing 1.08.

*Credibility Determination*

Ms. Parker next claims that the ALJ improperly discredited her testimony and credibility, "disparag[ing] her testimony with the all too common and unhelpful 'not entirely credible' remark." Pltf. Memo., at 14. Ms. Parker claims that "there is no explanation in the decision of why Ms. Parker's credibility should be questioned." Pltf. Memo., at 15. According to Ms. Parker, the ALJ's "faulty credibility assessment, standing alone, should cause a remand of this case." Pltf. Memo., at 17.

An ALJ's credibility finding is afforded "considerable deference" and will be overturned only if "patently wrong." Terry v. Astrue, 580 F.3d 471, 477 (7th Cir. 2009). The ALJ must consider "the claimant's level of pain, medication, treatment, daily activities, and limitations" while also "justify[ing] the credibility finding with specific reasons supported by the record." Terry v. Astrue, 580 F.3d 471, 477 (7th

Cir. 2009). A reviewing court "merely examine[s] whether the ALJ's determination was reasoned and supported." Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008).

In the course of his opinion, the ALJ discussed Ms. Parker's level of pain, medication, treatment, daily activities, and limitations and found discrepancies that justified his credibility determination. The ALJ noted that while Ms. Parker claimed that she suffered from constant weakness throughout her body following her bilateral mastectomy, her physician reported that she was "doing well" after her reconstructive surgeries and indicated she had "no major concerns." Rec., at 27, 606. The ALJ noted that Ms. Parker testified at the hearing that she had generalized pain that radiated throughout her body. Rec., at 27. The ALJ also noted that Ms. Parker cooked simple meals, visited her family in Chicago, had full strength in her extremities, and had an intact gait. Rec., at 27-28. Finally, the ALJ noted that Ms. Parker claimed she carried everything with two hands and regularly drops objects due to her carpal tunnel syndrome. Rec., at 26. The ALJ noted that an EMG of her upper extremities demonstrated no evidence of carpal tunnel syndrom. The ALJ noted, as well, that Dr. Siddiqui found that Ms. Parker had intact grip strength and was "able to pick [up] and grip coin well with both hands separately." Rec., at 28, 595.

Ms. Parker claims that the ALJ's credibility determination was insufficiently articulated, but the inconsistencies between Ms. Parker's statements about the limiting effects of her impairments and the medical evidence in the record cited

by the ALJ provide the support required for a credibility determination. "It is only when the ALJ's [credibility] determination lacks any explanation or support that we will declare it to be patently wrong." Elder v. Astrue, 529 F.3d 408, 413 (7th Cir. 2008). The ALJ's analysis of the inconsistencies between Ms. Parker's statements and the medical evidence is sufficient so his credibility determination is not patently wrong.

*Age Determination*

Ms. Parker next claims that the ALJ erred in considering her age in relation to her ability to work. Ms. Parker notes the ALJ found that she was 48 years old at the time of her disability's alleged onset date, but stated that she wasn't disabled "through the date of this decision," more than two years after the alleged onset date, at which time she had reached 51 years of age. Rec., at 29–30. Ms. Parker says age is highly relevant to disability determinations, so the ALJ's consideration of her age in his decision constitutes an error. Pltf. Memo., at 17.

Under the Social Security Administration's regulations, a 48-year-old is a "younger individual," whereas a 51-year-old is a "person closely approaching advanced age." 20 C.F.R. § 404.1563(d–e). Ms. Parker correctly notes that the difference between a "younger individual" and a "person closely approaching advanced age" can be significant for some disability determinations. The age classification is particularly relevant to Ms. Parker's case because the ALJ limited

her to sedentary work, a limitation that triggers a disability determination for people over 50 in some circumstances. Rec., at 25; *see also* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(g) (under the Medical-Vocational Guidelines, a person approaching advanced age and limited to sedentary work will ordinarily be found to be disabled if that person has no transferable skills and cannot perform relevant past work). The relevance of age categories under the regulations, however, relates only to the ability of a claimant to adjust to new work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.00(g); 20 C.F.R. § 404.1563 (noting that the Social Security Administration considers advancing age to be a significant factor in the claimant's ability to adjust to a new type of work); Tom v. Heckler, 779 F.2d 1250, 1256 (7th Cir. 1985) (affirming that "[u]nder the regulations, age plays an important role in the determination of whether or not skills are transferable"). The ALJ found Ms. Parker capable of performing past relevant work as a loan interviewer and a correspondence review clerk. Rec., at 28. The ALJ's finding that Ms. Parker could perform past relevant work was a sound basis for his determination that she wasn't disabled at the alleged onset date, when she was 48 years old, and at the date of his decision, when she was 51 years of age. The ALJ didn't err when considering Ms. Parker's age in his disability determination.

C.

Ms. Parker lastly argues that even though the ALJ found that her fibromyalgia was a severe impairment, he wrongfully minimized its effects and failed to follow Social Security Rule 12-2p, which provides guidance on evaluating fibromyalgia in disability claims. Ms. Parker specifically alleges that the ALJ failed to follow SSR 12-2p when determining whether her condition met or medically equaled a listing and in determining her residual functional capacity.

First, the court must examine the ALJ's consideration of Ms. Parker's fibromyalgia in his determination that she did not meet a listing. Because fibromyalgia isn't a listed impairment, Social Security Rule 12-2p requires an ALJ to determine whether a claimant's fibromyalgia medically equals a listing alone or in combination with another medically determinable impairment, SSR 12-2p, and adequately articulate the foundation for his conclusions. <u>Scott v. Barnhart</u>, 297 F.3d 589, 595 (7th Cir. 2002). Ms. Parker bears the burden of demonstrating that she meets the criteria specified in a listing. <u>Ribaudo v. Barnhart</u>, 458 F.3d 580, 583 (7th Cir. 2006).

The ALJ adequately articulated the foundation for his conclusion that Ms. Parker did not meet a listing, despite his finding that her fibromyalgia was a severe impairment. Even though the ALJ noted that no medical source found that Ms. Parker met any listing, Rec., at 24, he analyzed whether Ms. Parker met relevant listings, including 1.04 (disorders of the spine) and 14.09 (inflammatory arthritis). Rec., at 24. While the ALJ didn't mention her fibromyalgia in his

analysis, he stated elsewhere in his opinion that he considered SSR 12-2p as it relates to fibromyalgia. Rec., at 24. Furthermore, the ALJ considered listing 14.09, the listing suggested by SSR 12-2p. The ALJ's consideration of SSR 12-2p, relevant listings, and the opinions of medical sources indicating that Ms. Parker didn't meet any listing constitutes an adequate articulation of a foundation for his conclusion that Ms. Parker's fibromyalgia didn't medically equal a listing alone or in combination with another medically determinable impairment.

The court next examines the ALJ's consideration of Ms. Parker's fibromyalgia in his residual functional capacity determination. The residual functional capacity "represents the maximum a person can do – despite [her] limitations – on a regular and continuing basis." Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013). A court must uphold an ALJ's residual functional capacity determination "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review." Arnett v. Astrue, 676 F.3d 586, 591–592 (7th Cir. 2012).

Social Security Rule 12-2p adds a requirement to the ALJ's residual functional capacity determination when fibromyalgia is found. The rule requires that the ALJ "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have bad days and good days." SSR 12-2p; Ingram v. Colvin, No. 1:13-CV-01081-SLD, 2014 WL 3704816, at *4 (C.D. Ill. July 25, 2014).

The ALJ noted medical evidence that indicated Ms. Parker suffered from "generalized weakness due to her fibromyalgia and history of breast cancer," so he limited her standing and walking requirements. Rec., at 28. Recognizing that the medical evidence indicated Ms. Parker's fibromyalgia "restricts her ability to lift heavier objects," the ALJ limited her lifting requirements. Rec., at 28. And the ALJ noted medical evidence indicating that pain from Ms. Parker's fibromyalgia required postural limitations, which he included in his findings. Rec., at 28.

Ms. Parker claims that "the only consideration of her fibromyalgia during the assessment of her residual functional capacity was to find [that] her statements were 'not entirely credible.'" Pltf. Memo., at 19. Despite Ms. Parker's claim that the ALJ failed to adequately consider her fibromyalgia in his residual functional capacity determination, the ALJ's decision was based on substantial evidence, he considered the longitudinal record, and he sufficiently explained his analysis. Because substantial evidence supports the ALJ's determination, and he articulated his analysis with sufficient detail and clarity to permit meaningful review, this court may not overturn it.

## III. CONCLUSION

The ALJ did not ignore important evidence in the record; his findings that Ms. Parker's glaucoma as well as her wrist and hand pain were non-severe was based on substantial evidence; he adequately articulated his determination that

Ms. Parker didn't meet or medically equal a listing; his credibility determination was not patently wrong; his age determination was not in error; and he adequately considered Ms. Parker's fibromyalgia when determining whether she met or medically equaled a listing and her residual functional capacity. Accordingly, the final decision of the Commissioner of Social Security is AFFIRMED.

SO ORDERED.

ENTERED: ___November 5, 2015___

___/s/ Robert L. Miller, Jr._____
Judge, United States District Court